# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of:<br><br>THE REPUBLIC OF ECUADOR,<br><br>        Applicant,<br><br>To Issue a Subpoena for the Taking of a Deposition and the Production of Documents. | 1:10-mc-00040 GSA<br><br>ORDER GRANTING THE REPUBLIC OF ECUADOR'S EX PARTE APPLICATION FOR THE ISSUANCE OF A SUBPOENA<br><br>(Document 1) |

**RELEVANT BACKGROUND**

On September 14, 2010, the Republic of Ecuador ("ROE") filed an ex parte application for an order pursuant to Title 28 of the United States Code section 1782 to issue a subpoena to Wayne Hansen for the taking of a deposition and the production of documents for use in a foreign proceeding. (*See* Docs. 1 & 2.)

More particularly, the ROE seeks the issuance of a subpoena to Wayne Hansen, a resident of this judicial district. The subpoena attached as Exhibit A to ROE's request reflects that the ROE seeks Mr. Hansen's testimony as well as production of documents in his possession, custody or control. (Doc. 1, Ex. A.) The deposition and documents are directly relevant to an

1

international arbitration proceeding brought pursuant to the United Nations Commission on International Law ("UNCITRAL") by Chevron Corporation and Texaco Petroleum Corporation against the ROE under the Ecuador-U.S. Bilateral Investment Treaty. (Doc. 1, P&As at 1 & Doc. 2, Ex. 19.) In that proceeding, Chevron alleges that a case currently pending before the court in Lago Agrio, Ecuador - wherein Chevron is accused of causing billions of dollars in environmental damage - is a "'sham' because the Ecuadorian judiciary is neither independent nor impartial." (Doc. 1, P &As at 1.) Chevron claims that Mr. Hansen and a Mr. Diego Borja videotaped meetings wherein a judge then presiding over the Lago Agrio action was offered bribes in exchange for a ruling adverse to Chevron. (Doc. 1, P &As at 1.)

## DISCUSSION

***Legal Standard***

Title 28 of the United States Code section 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The purpose of this section is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). The section "authorizes, but does not require, a federal district court to provide assistance to a complainant" in a foreign proceeding. *Id.*, at 255.

Further, in exercising its wide discretion to grant discovery pursuant to section 1782, the Supreme Court had indicated that a district court should consider

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign

country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. In addition, district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.

*In re Application of Chevron Corp.*, ___ F.Supp.2d ___, 2010 WL 1801526 *6 (S.D.N.Y. May 6, 2010), citing *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. at 264-65, internal quotations omitted.

  Lastly, an ex parte application is an acceptable method for seeking discovery pursuant to section 1782 of Title 28 of the United States Code. *See In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

  *Analysis*

  Wayne Hansen currently resides in Bakersfield, and thus is within the jurisdiction of this Court. (*See* Doc. 1, P&As at 16 & Doc. 2, Ex. 44.)  Further, the discovery sought be ROE will be "use[d] in a proceeding in a foreign or international tribunal" - the international arbitration proceedings. (*See* Doc. 1, P&As at 16 & Doc. 2, Ex. 19.)  The ROE is an "interested person" as the respondent in the Treaty Arbitration proceedings and as the host country in the underlying Lago Agrio proceeding. (Doc. 1, P&As at 16.)

  As to the discretionary factors to be considered by this Court, each is addressed in turn.

        **Jurisdictional Reach of Foreign Tribunal**

  The Supreme Court has noted that

> when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel Corp.*, 542 U.S. at 264.  Here, Mr. Hansen is not a party to the international arbitration nor

to the Lago Agrio proceeding, and therefore this factor weighs in the ROE's favor.  *See also In re Chevron Corp.*, ___ F.Supp.2d ___, 2010 WL 1801526 at *7 (noting that Ecuadorian court and international arbitral tribunal lacked jurisdiction to compel the individual, who was located in the district and not a party to the foreign proceedings, to produce the material sought).

### Nature and Receptivity of Foreign Tribunal

There is no evidence before the Court that the international arbitral tribunal at issue here is either receptive or nonreceptive to United States federal-court jurisdictional assistance, and therefore this factor is essentially neutral.

However, this Courts notes that Chevron has made section 1782 requests before other United States federal courts for use in the international arbitration at issue and does not appear to have made any contention that the arbitral tribunal would not be receptive to such.  Moreover, several of those courts have authorized subpoenas under section 1782.  *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 3489922 *5-6 (D.Colo. Apr. 13, 2010) (noting that "Judge Kane held a hearing on the Section 1782 petition . . . and granted the issuance of the subpoenas with leave for the filing of any motions to quash within thirty days"); *see* also Doc. 2, Ex. 53 (*In re Chevron Corp.*, No. 1:10-MI-0076-TWT-GGB, slip opn. at 9 (N.D.Ga. Mar. 2, 2010) (stating that "[s]ection 1782 has . . . been applied to authorize discovery for matters subject to international arbitration, like the [international arbitration here]").  Finally, the Court takes note that even opposition by the international arbitral tribunal would not necessarily control.  *See In re Chevron Corp.*, ___ F.Supp.2d ___, 2010 WL 1801526 at *8 & n. 51 (in *Intel*, the European Commission stated that it did not need or want U.S.- federal court assistance).

### Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

There is nothing to suggest that the ROE's section 1782 application is an attempt to circumvent foreign proof-gathering restrictions.  Indeed, it does not appear that the international arbitral tribunal at issue here could compel Mr. Hansen to provide evidence because he is not a

party to the international arbitration.  *See In re Chevron Corp.*, ___ F.Supp.2d ___, 2010 WL 1801526 at *8 (applying same reasoning).  Thus, this factor weighs in the ROE's favor.

**Undue Intrusion or Burden**

In its application, the ROE explains that it wishes to subpoena Mr. Hansen to provide testimony and produce documents because Chevron has identified Mr. Hansen as a witness in its allegations that the ROE's "judicial branch has conducted the Lago Agrio Litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs." (Doc. 2, Ex. 19, ¶ 4.)  As reflected in its notice of arbitration for the international arbitration, Chevron claims as follows:

> Judge Nunez [the presiding judge in the Lago Agrio lawsuit] has made statements to third parties, unrelated to the Lago Agrio Litigation, indicating a pre-disposition of the outcome of the case. In April 2009, two individuals pursuing business opportunities in Ecuador--an Ecuadorian named Diego Borja and a U.S. citizen named Wayne Hansen--were invited to meet with Judge Nunez in connection with potential remediation projects to be funded with the proceeds of a judgment against Chevron. Two meetings were arranged between Messrs. Borja and Hansen and Judge Nunez. During these meetings, while the Lago Agrio Litigation was still in its evidentiary phase and additional filings by the parties were still to be made, Judge Nunez was recorded stating that he would issue a ruling in late 2009 finding Chevron liable and that the appeals would be a formality.
> Messrs. Borja and Hansen also were invited to meet in the offices of Ecuador's ruling Alianza PAIS party with persons including Patricio Garcia, who identified himself as a political coordinator for the party. Mr. Garcia was recorded stating that the remediation contracts would be awarded in exchange for a bribe which was to be divided between Judge Nunez, the office of the Presidency of Ecuador and the Lago Agrio plaintiffs. Mr. Garcia also stated that the legal advisor of the Ecuadorian President's office, Alexis Mera, had given instructions as to how the proceeds of the supposed Lago Agrio judgment against Chevron were to be routed, and that the executive branch was involved in drafting Judge Nunez's decision.

(Doc. 2, Ex. 19, ¶¶ 52-53.)

According to the ROE, Mr. Hansen's "conduct and knowledge is directly relevant" to the treaty proceedings.  The ROE tailored its document request as well as the deposition subjects to address Mr. Hansen's knowledge of Chevron's contention that the ROE is "internationally liable

5

for Judge Nunez's alleged corruption" and that Mr. Hansen "knowingly, willingly and eagerly injected himself into the dispute and is thus deemed at least on constructive notice that he may be called as a witness." (Doc. 1 at 18.)

This Court is satisfied the ROE has made a prima facie showing that the information it seeks from Mr. Hansen has, generally speaking, some relevance to the international arbitration in light of the allegations made by Chevron in its notice of arbitration, as well as to the purported conversations giving rise to those allegations. And given the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or burden to Mr. Hansen. The final discretionary factor thus weighs in favor of issuance of the subpoena. Notably too, this Court's ruling would not serve to preclude either Mr. Hansen or Chevron from challenging the subpoena.

## CONCLUSION

In light of the foregoing discussion, the Court GRANTS the application. The ROE may serve its subpoena directed to Wayne Hansen as attached to its application, albeit modified to reflect a date that has not since passed.

IT IS SO ORDERED.

**Dated:   October 13, 2010**           /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE